U.S. DISTRICT COURT
N.D. OF N.Y.
FILED

JAN 13 2011

LAWRENCE K. BAERMAN, CLERK
ALBANY

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | |
|---|---|
| UNITED STATES OF AMERICA | **PLEA AGREEMENT** |
| v. | Criminal Action No.<br>10-CR-00320 (CBK) |
| **ED GEORGE PARENTEAU,**<br>a/k/a "ed-george" | |
| Defendant. | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

RICHARD S. HARTUNIAN, United States Attorney for the Northern District of New York (by RICHARD BELLISS, appearing) and ED GEORGE PARENTEAU (*pro se*) hereby enter into the following Plea Agreement regarding the disposition of certain criminal charges against the Defendant:

1. **Defendant's Promises.** In return for the consideration described below, ED GEORGE PARENTEAU agrees as follows:

   a. The Defendant will withdraw his previous plea of "Not Guilty" and enter a plea of "Guilty" to Count 2 of Indictment 10-CR-00320, charging him with mail fraud, in violation of 18 U.S.C. § 1341, in full satisfaction of all charges that relate to any mail fraud, or conspiracy or attempt to commit mail fraud, as alleged in Count 2 of the Indictment, all occurring from March 4, 2009 until about June 18, 2010, as outlined in more detail below;

1

b.      The Defendant waives his right to appeal or collaterally attack his conviction. In the event the Defendant receives a sentence of 24 months or less, the Defendant waives his right to appeal or collaterally attack his sentence, as more fully set forth in paragraph 15, below;

c.      The Defendant consents to the entry of an order directing him to pay restitution in full to any person who would qualify as a victim, under 18 U.S.C. § 3663 or § 3663A, of the following offense, whether or not the offense is encompassed in the offense of conviction in Count 2: mail fraud between March 4, 2009 and June 18, 2010;

d.      The Defendant consents to the entry of an order prohibiting him, for a period to begin on the date of the signing of this Agreement and lasting until the expiration of any term of supervised release, from filing, serving, mailing, delivering, e-mailing or sending any lien or judgment against any individual, corporation, municipality, etc. without first obtaining written permission from the Court;

e.      The Defendant, within 30 days of entering his guilty plea pursuant to this Agreement, will withdraw, renounce, and/or terminate any Uniform Commercial Code-1 Financing Statement in which the individuals or government entities described in paragraphs 5c and 5d are listed as debtors to the secured party of ED GEORGE PARENTEAU or any alias thereof.

2.      **Potential Penalties.**  ED GEORGE PARENTEAU understands that his guilty plea to Count 2 (mail fraud, in violation of 18 U.S.C. § 1341) will subject him to the following potential penalties:

a.      <u>Maximum term of imprisonment</u>: 20 years.  (18 U.S.C. § 1341).

b.      <u>Supervised Release</u>:  In addition to imposing any other penalty, the

sentencing Court may require the Defendant to serve a term of supervised release of up to five years, to begin at the expiration of any term of imprisonment imposed upon him. (18 U.S.C. § 3583(b)(1)). Should the Defendant be placed on a term of supervised release and subsequently violate any of the terms and conditions of that release before the expiration of such term, he may be sentenced to up to 3 years imprisonment in addition to any prison term previously imposed upon him and in addition to the statutory maximum term of imprisonment set forth above. Under some circumstances, the Court may also extend the term of supervised release, and it may modify, reduce, or enlarge the conditions of such release.

  c. <u>Maximum fine</u>: $250,000.00. (18 U.S.C. § 3571(b)(3)).

  d. <u>Special Assessment</u>: The Defendant will be required to pay an assessment of $100.00, which is due and payable at the time of sentencing. (18 U.S.C. § 3013). The Defendant agrees to deliver a check or money order to the Clerk of the Court in the amount of $100.00, payable to the U.S. District Court at the time of his sentencing.

  e. <u>Interest and penalties</u>: Interest and penalties may accrue, as a matter of law, on any unpaid financial obligation imposed as part of the Defendant's sentence, from as early as the date of sentencing.

  f. <u>Collateral Consequences</u>: Conviction of a felony under this Agreement may result in the loss of certain civil rights, including, but not limited to, the right to vote or the right to possess firearms, and may result in deportation or removal from the United States depending on the defendant's immigration status.

  g. <u>Forfeiture</u>: The sentence imposed by the Court will include an order of forfeiture, as more fully set forth below in paragraph 15. (18 U.S.C. § 2253(a)).

3

h.   <u>Restitution</u>: The sentencing Court may order that the Defendant pay restitution to any victim of the offense of conviction, as more fully set forth in paragraph 1c above. (18 U.S.C. §§ 3663 & 3664). Defendant understands that an unanticipated amount of a restitution order will not serve as grounds to withdraw Defendant's guilty plea. Defendant further agrees to comply with any restitution order entered into at the time of sentencing. Defendant further agrees that Defendant will not seek the discharge of any restitution obligation, in whole or in part, in any present or future bankruptcy proceeding. Defendant agrees to make full restitution for the provable losses caused by Defendant's activities. Defendant further agrees to grant the United States a wage assignment, liquidate assets, or complete any other tasks which will result in immediate payment in full, or payment in the shortest time in which full payment can be reasonably made as required under 18 U.S.C. 3572(d).

Defendant further agrees to make full and accurate disclosure of his financial affairs to the United States. Specifically, Defendant agrees that, before sentencing, Defendant shall provide to the United States, under penalty of perjury, a financial statement which shall identify all assets owned or held directly or indirectly by Defendant. Defendant shall also identify all assets valued at more than $5,000.00 which have been transferred to third parties since the date of the Indictment, including the location of the assets and the identity of the third party(ies).

The parties will jointly recommend that as a condition of probation or supervised release and at any other time after execution of this Agreement, Defendant will notify the Financial Litigation Unit, United States Attorney's Office, of any interest in property obtained, directly or indirectly, including any interest obtained under any other name, or entity, including a trust,

partnership or corporation after the execution of this agreement until the fine or restitution is paid in full. *See* 18 U.S.C. 3664(k), (n).

The parties will also jointly recommend that as a condition of probation or supervised release and at any other time after execution of this Agreement, Defendant will notify the Financial Litigation Unit, United States Attorney's Office, before Defendant transfers any interest in property owned directly or indirectly by Defendant, including any interest held or owned under any other name or entity, including trusts, partnership and/or corporations. *See* 18 U.S.C. 3664(k), (n).

The Defendant further agrees that whatever monetary penalties are imposed by the Court will be due immediately and subject to immediate enforcement by the United States as provided for in 18 U.S.C. § 3613. If the Court imposes a schedule of payments, the Defendant understands that the schedule of payments is merely a minimum schedule of payments and not the only method, nor a limitation on the methods, available to the United States to enforce the judgment. If the Defendant is incarcerated, the Defendant agrees to participate in the Bureau of Prisons' Inmate Financial Responsibility Program, regardless of whether the Court specifically directs participation or imposes a schedule of payments.

3. **Sentencing Factors.** ED GEORGE PARENTEAU understands that the sentence to be imposed upon him is within the discretion of the sentencing Court, subject to the statutory maximum penalties and the provisions of the Sentencing Reform Act and the United States Sentencing Guidelines promulgated thereunder, as modified by *United States v. Booker*, 543 U.S. 220 (2005). While the Court is not ultimately bound to impose a sentence within the applicable

Sentencing Guidelines range, it must take into account the Sentencing Guidelines, along with the other factors set forth in 18 U.S.C. § 3553(a).

4.      **Elements of the Offense.** ED GEORGE PARENTEAU understands the following legal elements of the offense stated in Count 2 (18 U.S.C. § 1341), and admits that these elements accurately describe his criminal conduct:

   a.      That in the Northern District of New York and elsewhere he knowingly devised or knowingly participated in a scheme or artifice to defraud or knowingly devised or knowingly participated in a scheme or artifice to obtain money or property by means of materially false or fraudulent pretenses, representations, or promises as detailed in Count 2 of the Indictment;

   b.      That he did so with the intent to defraud;

   c.      That in advancing, or furthering, or carrying out this scheme to defraud or scheme to obtain money or property he made a materially false statement or used fraudulent pretenses, representations, or promises; and

   d.      That he used the mails or caused the mails to be used.

5.      **Factual Basis for the Plea.** ED GEORGE PARENTEAU admits the following facts, which establish his guilt on the offense stated in 18 U.S.C. § 1341:

   a.      For at least some of the times relevant herein, ED GEORGE PARENTEAU resided in Chenango County, New York or Ulster County, New York, both of which are located in the Northern District of New York.

   b.      On March 4, 2009, PARENTEAU and his associate, JEFFREY

CHARLES BURFEINDT, were encountered, and subsequently arrested by Town of Lloyd Police Officers K.B. and A.K. for trespassing and/or false personation on a piece of real estate located at 224 Chapel Hill Road, Highland, New York.

    c.  Following BURFEINDT's and PARENTEAU's arrests, they were taken to the Lloyd Police Department, processed, and then brought before the Honorable E.R., Town Judge, Lloyd Justice Court, for arraignment on the trespassing and / or false personation charges. During the events of March 4, 2009, or through subsequent interactions with various employees of the Town of Lloyd, its Police Department or Ulster County, the defendant identified the names of the following government employees:

| | |
|---|---|
| K.B.: | Lloyd Police Officer |
| A.K.: | Lloyd Police Officer |
| D.A.: | Lloyd Police Chief |
| J.C.: | Lloyd Police Officer |
| D.M.: | Assistant District Attorney, Ulster County |
| E.R.: | Lloyd Town Justice |

    d.  All of PARENTEAU's interactions with the individuals referenced in paragraph 5c (hereinafter "municipal employees) were in the municipal employees' professional or official capacities. None of the aforementioned municipal employees, or the Town of Lloyd, the Town of Lloyd Police Department, or Ulster County (hereinafter "municipalities") violated, in any way, any of BURFEINDT's or PARENTEAU's civil or legal rights on March 4, 2009 or in any subsequent related interaction. Moreover, none of the municipal employees or municipalities referenced above consented or agreed to be a debtor or "libellee" to BURFEINDT or PARENTEAU, nor did any of the municipal employees or municipalities consent or agree to have any of their personal or real property encumbered by any judgments, liens or Uniform

7

Commercial Code-1 (UCC-1) Financing Statements in which BURFEINDT or PARENTEAU were identified as the "libellant," secured party or secured creditor.

      e.    Despite the absence of any legitimate claim, commercial agreement, contract or understanding between BURFEINDT / PARENTEAU and the municipal employees or municipalities referenced above, BURFEINDT and PARENTEAU devised and participated in a lien and judgment scheme in order to defraud the municipal employees and municipalities of the use of their monies. The lien and judgment scheme worked in the following general manner: BURFEINDT and PARENTEAU, within the Northern District of New York, mailed, in or about late August, 2009, documents entitled "Declaration in the nature of an affidavit of negative averment, opportunity to cure, and counterclaim" to various municipal employees and municipalities as described in paragraphs 5c and 5d. These documents contained false claims for monetary damages arising out of BURFEINDT's and PARENTEAU's trespassing and/or false personation arrests on March 4, 2009 and subsequent court proceedings. These documents claimed to serve as admissions by the municipal employees and municipalities in the event the municipal employees and municipalities did not respond and pay monetary damages within fourteen days of the date of the documents. None of the municipal employees or municipalities responded to the aforementioned documents because the documents were without merit.

      f.    Between September, 2009 and October, 2009, BURFEINDT and PARENTEAU, as set forth in Counts 1 and 2 of the Indictment, mailed various documents entitled "Demand for Payment" "Second Demand for Payment" and "Final Demand for Payment" to the various municipal employees and municipalities described in paragraphs 5c and 5d. These documents falsely claimed that BURFEINDT and PARENTEAU were owed multi-

billion dollar sums of money for purported damages committed by the municipal employees and the municipalities and their failure to respond to the "negative averment" declaration(s). None of the municipal employees or municipalities paid any moneys to BURFEINDT or PARENTEAU because the claims were baseless. Nonetheless, in late October, 2009, BURFEINDT and PARENTEAU each mailed documents entitled "Notice of Final Determination and Judgement in Nihil Dicit" to the municipal employees and municipalities described in paragraphs 5c and 5d. These "Judgements" falsely claimed that the municipal employees and municipalities now had judgments against them for multi-billion sums of money and that BURFEINDT and PARENTEAU were the respective holders of the judgments.

    g. In early to mid-November, 2009, BURFEINDT and PARENTEAU each drafted and signed various documents entitled "Notice of Claim of Maritime Lien" which falsely claimed that BURFEINDT and PARENTEAU were each entitled to multi-billion dollar liens against the personal and real property belonging to the municipal employees and municipalities described in paragraphs 5c and 5d. Once in possession of the fraudulent "Maritime" liens, PARENTEAU prepared a New York State UCC-1 Financing Statement which falsely claimed that based upon the previously described judgments and liens, he was a secured creditor of the municipal employees and municipalities and that he had a $62,653,950,000.00 security interest in the personal and real property belonging to the municipal employees and municipalities. PARENTEAU then filed the UCC-1 Financing Statement with the New York State, Department of State, Division of Corporations, State Records and Uniform Commercial Code on November 20, 2009. Once the UCC-1 Financing Statement was filed with the aforementioned New York State agency on November 20, 2009, it became publicly available to any person interested in

investigating whether any of the municipal employees or municipalities were the subject of any liens or judgments.

      h.      On July 29, 2009 and August 3, 2009, PARENTEAU and BURFEINDT, respectively, filed separate "Verified Complaint[s] and Counter-Claim[s]" in United States District Court in the Northern District of New York (see case numbers 09-CV-0869 and 09-CV-0894). These lawsuits falsely claimed that the municipal employees and municipalities described in paragraphs 5c and 5d committed various wrongs against BURFEINDT and PARENTEAU, and that as a result, BURFEINDT and PARENTEAU were entitled to vast sums of money.

      i.      BURFEINDT and PARENTEAU knew, and intended, that the municipal employees and municipalities described in paragraphs 5c and 5d would be forced to take legal action in response to all of the false and baseless documents, liens, judgments and lawsuits. In particular, PARENTEAU knew and intended that the Town of Lloyd and Ulster County (or its insurance carriers) would have to expend legal fees in order to defend against the numerous false liens, judgments and lawsuits described above. Moreover, it was a reasonably foreseeable consequence that the Town of Lloyd and Ulster County would incur additional legal fees while bringing a civil lawsuit against BURFEINDT and PARENTEAU in order to attempt to enjoin them from filing any further false liens, judgments or lawsuits (see *County of Ulster, et al. v. Richard Enrique Ulloa, Sara Ulloa, Jeffrey Charles Burfeindt, et al.* 10-CV-00467 filed in the NDNY).

      j.      PARENTEAU admits and agrees that the Town of Lloyd and Ulster County, and / or its insurance carriers have expended more than $30,000.00, but less than

$70,000.00 on legal fees in response to the false liens, judgments and lawsuit(s) filed by PARENTEAU.

      k.    On or about June 22, 2010, investigators from the Federal Bureau of Investigation in Albany, New York executed a search warrant at PARENTEAU's residence in Sherburne, New York. Investigators seized multiple computers and external storage devices. Seized within various electronic folders on said computers and external storage devices were various word processing files, .jpg files and .pdf files containing many of the false documents, liens, judgments and UCC-1 Financing Statements described above. Also on June 22, 2010, PARENTEAU agreed to an interview with investigators. During this interview PARENTEAU admitted that he wrote all of the demand for payment letters, judgments and liens, etc. in which PARENTEAU described himself as the "libellant" or "secured party" or "secured creditor". Additionally, PARENTEAU admitted that the purpose of the liens was to "cut off" the credit of the various municipal employees and municipalities as described in paragraphs 5c and 5d.

      l.    At all relevant times PARENTEAU's actions were committed with the intent to defraud the municipal employees and municipalities described in paragraphs 5c and 5d. Moreover, at no time did BURFEINDT or PARENTEAU ever obtain any advice from a licensed attorney or paralegal that any of their actions were lawful or appropriate. PARENTEAU's actions in mailing and filing false liens, judgments and lawsuits against the municipal employees and municipalities were done because the aforementioned employees and municipalities had displeased PARENTEAU in one manner or another.

      m.    The parties incorporate by reference, as further factual admissions by the

Defendant, the stipulations as to sentencing factors and issues set forth in paragraph 9a below. Moreover, the Defendant understands that the sentencing Court may make factual findings with respect to any and all sentencing factors and issues, including those referenced in the United States Sentencing Guidelines whether or not such factors or issues have been admitted by the Defendant or stipulated by the parties. In making those findings by a preponderance of the evidence, the Court may consider any reliable evidence, including hearsay. The Defendant agrees that his sentence may be determined based upon such judicial fact-finding.

6. **Use of Defendant's Admissions.** The Defendant agrees that the statements made by him in signing this Agreement, including the factual admissions set forth above, shall be admissible and useable against him by the United States in any subsequent criminal or civil proceeding, even if he fails to enter a guilty plea pursuant to this Agreement, or if such a guilty plea is later vacated or withdrawn. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with any paragraphs below.

7. **Collection of Financial Obligations.** In order to facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to fully disclose all assets in which he has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

   a. The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement and disclosures will be complete, accurate and truthful.

   b. The Defendant expressly authorizes the U.S. Attorney's Office to obtain a

credit report on him in order to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court.

8.  **Government's Promises and Reservation of Rights.**  In exchange for the plea of guilty to Count 2 (18 U.S.C. § 1341) by ED GEORGE PARENTEAU and his continuing compliance with all of the terms of this Plea Agreement, the United States Attorney's Office for the Northern District of New York agrees as follows:

a.  At the time of sentencing, it will move to dismiss Count 1 against the Defendant in Indictment 10-CR-00320 for so long as the guilty plea and sentence on Count 2 remain in effect.

b.  It will bring no further federal criminal charges against the Defendant relating to mail fraud, including attempting, conspiring or aiding and abetting mail fraud, between March 4, 2009 and June 18, 2010, which is described in Count 2 of the Indictment and the Defendant's admissions in paragraph 5, above, for so long as the guilty plea and sentence on Count 2 of the Indictment remain in effect.

c.  If the guilty plea to violating 18 U.S.C. § 1341 is later withdrawn or vacated, the charges dismissed or not prosecuted pursuant to paragraphs 8a and 8b of this Agreement may be filed and prosecuted, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the reinstatement of any such charges. The Defendant waives any defense or objection to the reinstatement and prosecution of any such charges that are not time-barred by the applicable statute of limitations as of the date of this Agreement.

d.  This Agreement does not prevent the government from either

recommending a specific sentence within the applicable Guidelines range as determined by the Court or, if the government deems appropriate, recommending that the Court impose a sentence above that range.

       e.     The U.S. Attorney's Office reserves the right to advise the sentencing Court and the Probation Office of any information, in aggravation or mitigation of sentencing, whether or not encompassed within Count 2 of the Indictment.

9.     **Stipulations**. The U.S. Attorney's Office and ED GEORGE PARENTEAU agree to stipulate at sentencing to the statement(s) set forth in the subparagraph(s) below.

       a.     The Defendant agrees that his intended loss to the Town of Lloyd and Ulster County is reflected by the actual loss, that is, the legal fees expended by the Town of Lloyd, Ulster County and / or its insurance carriers in responding to the false liens, judgments and lawsuits of the Defendant. Moreover, the parties stipulate that the legal fees expended are more than $30,000.00 but less than $70,000.00 and that this figure represents reasonably foreseeable pecuniary harm in accordance with U.S.S.G. 2B1.1(b)(1)(D) and its accompanying commentary and policy statements.

       b.     The U.S. Attorney's Office will recommend a 2-level downward adjustment to the applicable Sentencing Guidelines range if, (A) through the time of sentencing, the Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of the Government for the offense of mail fraud, as defined in U.S.S.G. § 3E1.1(a); and (B) the Government does not learn of new evidence of conduct committed by the Defendant, either before or after his guilty plea, that constitutes "obstruction of justice," as defined in U.S.S.G. § 3C1.1. If the Defendant clearly demonstrates "acceptance of responsibility" to the satisfaction of

the Government and promptly enters a plea of guilty, thereby permitting the U.S. Attorney's Office to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently, the U.S. Attorney's Office may, in its sole discretion, move for an additional downward adjustment of 1 level, if the Defendant otherwise qualifies under U.S.S.G. § 3E1.1(b).

    c. Until the Probation Office has fully investigated the Defendant's criminal history, it is not possible to predict with certainty the Defendant's Criminal History Category and, in some cases, his total offense level.

    d. It is understood that these stipulations cannot and do not bind the sentencing Court, which may make independent factual findings by a preponderance of the evidence and may reject any or all stipulations between the parties. The rejection of any or all stipulations by the Court will not be the basis for the withdrawal of a plea of guilty by the Defendant, and will not release either the U.S. Attorney's Office or the Defendant from any other portion of this Agreement, including any other stipulations agreed to herein.

    e. No stipulation in this Agreement shall affect the parties' respective obligations to ensure that, to the extent possible, the Court has all information pertinent to its determination of an appropriate sentence. The parties may provide any such factual information to the Probation Office and/or to the Court, without limitation, before or after the completion of the Presentence Investigation Report, and agree that the submission of such information shall not be deemed "advocacy" in violation of any stipulation in this Agreement.

    f. To the extent the stipulations above do not reflect agreement on

any factor or issue potentially affecting the applicable advisory Sentencing Guidelines range, the Defendant and the U.S. Attorney's Office each expressly reserves the right to advocate if, and how, any such factor or issue would apply under the Sentencing Guidelines.

10. **Preliminary Sentencing Guidelines Estimates.** The Defendant understands that any estimate of the Defendant's total offense level, criminal history score, and/or Sentencing Guidelines range provided before sentencing is preliminary and is not binding on the parties to this Agreement, the Probation Office, or the Court.

11. **Limitations on Agreement.** This Agreement is limited to the U.S. Attorney's Office for the Northern District of New York and cannot bind other federal, state or local prosecuting authorities. Furthermore, this Agreement does not prohibit the United States, any agency thereof, or any third party from initiating or prosecuting any civil or administrative proceedings directly or indirectly involving the Defendant, including, but not limited to, proceedings by the Internal Revenue Service relating to potential civil tax liability or proceedings relating to the forfeiture of assets.

12. **Agreement Not Binding on the Court.** The Court is neither a party to, nor bound by this Agreement. The Court may accept or reject this Plea Agreement or defer a decision until it has considered the Presentence Investigation Report prepared by the U.S. Probation Office.

    a. If the Court rejects the provisions of this Agreement permitting the Defendant to plead guilty to Count 2 in satisfaction of other charges, which provisions were negotiated pursuant to Fed. R. Crim. P. 11(c)(1)(A), the Court will afford the Defendant an opportunity to withdraw his plea of guilty prior to sentencing, pursuant to Fed. R. Crim. P. 11(c)(5) & (d).

   b. The Court is not bound by any recommendation, stipulation, or request made by the parties, pursuant to Fed. R. Crim. P. 11(c)(1)(B), as to the appropriate sentence, and the Defendant may not withdraw his plea of guilty if the Court declines to follow any such recommendation, stipulation, or request. The U.S. Attorney's Office reserves the right to support and defend, in connection with any post-sentencing proceedings, any decision the Court may make with regard to the Defendant's sentence, whether or not such decision is consistent with this Office's recommendations, stipulations, or requests.

  13. **Remedies for Breach.** Should the U.S. Attorney's Office determine that the Defendant, after the date of this Plea Agreement, (i) has committed any further crime or violated any condition of release or supervision imposed by the Court (whether or not charged); (ii) has given false, incomplete, or misleading testimony or information; or (iii) has otherwise breached any condition of this Agreement, the U.S. Attorney's Office will have the right, in its sole discretion, to void this Agreement, in whole or in part. In the event of any such breach, the Defendant will not be permitted to withdraw his guilty plea under this Agreement, but will thereafter be subject to prosecution for any federal criminal violation of which the U.S. Attorney's Office has knowledge.

   a. The Defendant waives any defense or objection to the commencement of any such prosecution that is not time-barred by the applicable statute of limitations as of the date of this Agreement, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of any such prosecution.

   b. Moreover, in connection with any such prosecution, any

information, statement, or testimony provided by the Defendant, and all leads derived therefrom, may be used against him, without limitation. The Defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410, to the extent these rules are inconsistent with this paragraph or with this Agreement generally.

  14. **Waiver of Defendant's Rights.** The Defendant acknowledges that he has read each of the provisions of the entire Plea Agreement and understands its provisions. The Defendant further acknowledges that his plea is voluntary and did not result from any force, threat, or promises (other than the promises in this Plea Agreement).

    a. The Defendant understands his right to assistance of counsel at every stage of the proceeding and has knowingly and voluntarily waived those right(s). The Defendant understands that by entering a plea of guilty, he will be giving up his rights (i) to be presumed innocent until proven guilty beyond a reasonable doubt; (ii) to plead not guilty; (iii) to trial by jury; (iv) to confront, cross-examine, and compel the attendance of witnesses at trial; (v) to present evidence in his defense; and (vi) to remain silent and refuse to be a witness against himself by asserting the privilege against self-incrimination.

    b. The Defendant has been advised of the nature of the charge to which he is entering guilty plea(s) and the nature and range of the possible sentence. The Defendant understands the sentencing Court's obligation to consider the United States Sentencing Guidelines as explained further in paragraph 3 above and the Court's discretion to depart from those Guidelines under some circumstances or otherwise to impose a reasonable sentence outside of the applicable Sentencing Guidelines range.

15. **Waiver of Appeal and Collateral Attack.** The Defendant acknowledges that, after careful consideration, he fully understands the extent of his rights to appeal, and/or to collaterally attack the conviction and sentence in this case. The Defendant waives any and all rights, including those conferred by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255, to appeal or collaterally attack his conviction and any sentence of imprisonment of 24 months or less, including any related issues with respect to the establishment of the advisory Sentencing Guidelines range or the reasonableness of the sentence imposed. The Defendant acknowledges that the number of months specified above is not a promise of any particular sentence and is not binding on the Court. The Defendant agrees that, should the sentence imposed exceed 24 months, this would not permit him to withdraw his guilty plea or to appeal or collaterally attack his conviction, but would merely allow the Defendant to appeal or collaterally attack the sentence imposed by the Court, to the extent permitted by 18 U.S.C. § 3742 and/or 28 U.S.C. § 2255.

16. **Memorialization of Agreement.** No promises, agreements or conditions other than those set forth in this Agreement will be effective unless memorialized in writing and signed by all parties or confirmed on the record before the Court. This Agreement, to become effective, must be signed by all of the parties listed below.

|  |  |
|---|---|
|  | RICHARD S. HARTUNIAN<br>United States Attorney<br>Northern District of New York |
| Dated: January 13, 2011 | By: *[signature]*<br>RICHARD BELLISS<br>Assistant U.S. Attorney<br>Bar Roll No. 515295 |
| Dated: January 13, 2011 | *ED GEORGE PARENTEAU* (handwritten)<br>ED GEORGE PARENTEAU<br>Defendant (*Pro se*) |
| Dated: January 13, 2011 | *[signature]*<br>GEORGE E. BAIRD<br>Stand-by Defense Attorney<br>Bar Roll No. 506247 |

20